UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SUZANNE HESS *on behalf of herself and all others similarly situated*,

Plaintiff,

-against-

I3 VERTICALS, LLC and CP-DBS, LLC, d/b/a PAYSCHOOLS,

Defendants.

**MEMORANDUM & ORDER**
**2:25-cv-3469-ST**

**TISCIONE, United States Magistrate Judge:**

PaySchools is a company that contracts with school districts to facilitate online lunch payments. PaySchools charges convenience fees to provide the service. Suzanne Hess ("Plaintiff") filed a class action against PaySchools alleging it charges unlawfully excessive junk fees. Plaintiff brings causes of action under New York's General Business Law, breach of contract, unjust enrichment, and fraud by omission. PaySchools moves to dismiss. Because PaySchools' conduct is neither misleading nor unlawful, the motion is GRANTED.

## BACKGROUND[1]

### I.   Factual Allegations

I3 Verticals, LLC and CP-DBS, LLC (collectively "PaySchools")[2] contracts with school districts to facilitate online payments for student lunch accounts. Am. Compl. ¶¶ 13–17. In doing so, PaySchools charges transaction fees. PaySchools website states:

> [a]n internet convenience fee and/or transaction fee may be assessed by each district for each transaction made. These fees are charged to

---

[1] This Court takes the factual allegations from the Amended Complaint, ("Am. Compl.") ECF No. 18, and assumes they are true for purposes of this Motion. *See Gamm v. Sanderson Farms, Inc.*, 944 F.3d 455, 458 (2d Cir. 2019). Additionally, "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)," *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998), including "information publicly announced on a party's website[.]" *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020).
[2] "I3 Verticals, LLC, is the parent company of CP-DBS, LLC that controls, manages, and dictates the policies of PaySchools." Am. Compl. ¶ 42. The two companies "jointly operate under the brand of PaySchools." *Id.* ¶ 39. For purposes of this Motion, we will refer to Defendants collectively as PaySchools.

> cover the credit card processing fee and the cost of using the site. The school district has the option to pay these fees or pass them along to parents.

PaySchools Central, *Is There a Cost or Fee for Using PaySchools Central or PaySchools Mobile?*, https://www.payschoolscentral.com, (accessed June 9, 2026). Its website also states

> [f]ees are assigned by your school district. If you cannot find the fee you are looking for, please contact your school directly, as they set up and assign all fees available in PaySchools Central. Here are some steps to locate your assigned and optional fees: (1) Assigned Fees - We provide a drop-down menu as well as a search box in the Fees card where you can either select 'Assigned Fees'; or enter a partial description or due date to search for a particular assigned fee. You will see the fee name, amount due, and associated student for each assigned fee. To view a fee's description, click the 'I' icon to the right of the fee name. You can add the fee to your shopping cart by clicking the shopping cart icon to the right of the fee. (2) Optional Fees - If you are looking for optional fees or other unassigned fees, select an option (not assigned Fees) from the drop-down menu in the Fees card. Fees will be listed for each of the students associated with your account. Again, use shopping cart icon to add the fee to your cart.

PaySchools Central, *I Cannot Find the Fee I Need to Pay.*, https://www.payschoolscentral.com, (accessed June 9, 2026).

Also included in the Amended Complaint is a screenshot from PaySchools' website. Am. Compl. ¶ 134. In the right-hand column under "Convenience and Processing Fees" PaySchools breaks down the charges by category: $1.95 for checking-account transfers; $1.95 for debit or credit card transactions less than $50; and 4.75% for debit or credit card transactions $50 or more. *Id*. From all appearances, PaySchools fully discloses its transaction fees.

Users also have the option to set up auto-replenishments that funds the student's account whenever the balance drops below a specified minimum. *Id*. ¶ 92. Fees are imputed on auto-replenishments as well. *Id*. ¶ 93. PaySchools also receives money from school districts for providing its services. *Id*. ¶¶ 5, 74.

PaySchools contracted with Garden City Union Free School District—where Plaintiff's child attends. *Id*. ¶¶ 37–38, 96. Plaintiff created a PaySchools account to provide her child with lunch money. *Id*. ¶ 97. She transferred less than $50 on a bi-weekly basis and used the auto-replenishment feature. *Id*. ¶¶ 99–102. Unsurprisingly and consistent with the notice provided, Plaintiff was charged fees for each transaction. *Id*. ¶¶ 97–102.

The thrust of Plaintiff's complaint is that PaySchools' service fees "simply pad PaySchools' bottom line, at the expense of families because, in most circumstances, the school districts already pay these companies for their services." *Id*. ¶ 25. Plaintiff states she would not have used PaySchools to fund her child's account had she known the fees contributed to profit. *Id*. ¶ 105.

Plaintiff claims the conduct is inherently misleading because reasonable consumers would assume PaySchools provide users with a low-cost service rather than profit from its fees. *Id*. ¶¶ 123, 144, 178–181.

Plaintiff alleges PaySchools "actions are illegal under federal law, violate state law, violate the terms between credit card companies and merchants, and upon information and belief violate the contract between the school, the school district, and the terms Defendants are required to comply with." *Id*. ¶ 6.

## II.    Procedural History

On May 16, 2025, Plaintiff sued PaySchools in the Nassau County Supreme Court. *See* Complaint ("Compl."), ECF No. 1-1. On June 20, 2025, PaySchools removed the case to this Court. *See* Notice of Removal, ECF No. 1. On October 10, 2025, Plaintiff filed her Amended Complaint. On July 23, 2025, the Parties consented to the exclusive jurisdiction of the

Magistrate Judge. *See* ECF Nos. 10, 11. PaySchools moved to dismiss on January 14, 2026. *See* Motion to Dismiss, ECF No. 20.

## **LEGAL STANDARD**

To survive a 12(b)(6) motion, the complaint must contain sufficient facts such that it "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a complaint states a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In doing so, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in plaintiff's favor. *See Gamm*, 944 F.3d at 458. But allegations that "are no more than conclusions are not entitled to the assumption of truth." *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010); *see Iqbal*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."); *Larsen v. Berlin Bd. of Educ.*, 588 F.Supp.3d 247, 256 (D. Conn. 2022) ("a court need not credit conclusory or contradictory allegations."). Indeed, where the plaintiff has "not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 547.

## **DISCUSSION**

### I.    General Business Law § 349

Plaintiff's first cause of action comes under New York's General Business Law ("GBL") § 349, which declares: "[u]nfair, deceptive, or abusive acts or practices in the conduct of any

business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." GBL § 349 is a markedly sweeping statute, covering "consumer-oriented conduct and, on its face, applies to virtually all economic activity." *Small v. Lorillard Tobacco Co.*, 94 N.Y.2d 43, 55 (1999).

GBL § 349 claims are brought for affirmatively deceptive conduct and material omissions. *Kommer v. Ford Motor Co.*, 2017 WL 3251598, at *4 (N.D.N.Y. July 28, 2017); *Szymczak v. Nissan N. Am., Inc.*, 2011 WL 7095432, at *16 (S.D.N.Y. Dec. 16, 2011). Both theories seek to determine whether the conduct "is likely to mislead a reasonable consumer." *Marcus v. AT&T Corp.*, 138 F.3d 46, 64 (2d Cir. 1998). "What is objectively reasonable depends on the facts and context of the alleged misrepresentations and may be determined as a matter of law or fact (as individual cases require)." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.*, 37 N.Y.3d 169, 178 (2021); *see also Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013) (recognizing courts may determine as a matter of law whether conduct is deceptive under GBL § 349).

Here, Plaintiff alleges PaySchools materially mislead consumers by profiting from transaction fees, violating the National School Lunch Act, violating Visa Rules, and concealing its profits and contracts. The arguments are unavailing.

### *Material Misrepresentation*

To bring a material misrepresentation claim, the plaintiff must allege "'that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.,* 18 N.Y.3d 940, 941 (2012)).

The first prong is easily satisfied. Consumer-oriented conduct is defined broadly as "an act having the potential to affect the public at large, as distinguished from merely a private contractual dispute." *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888 (3d Dep't 2008). There is no genuine question whether PaySchools' conduct is consumer oriented. It is under the second and third prongs that Plaintiff's claim begins to take on water.

i.  Materially Misleading

The common thread weaving Plaintiff's GBL claim is that PaySchools misrepresents the purpose of the fees, disguising profits as costs. Specifically, Plaintiff states

> PaySchools represents that its fees cover the "cost" of processing payment transactions and running its website. That statement is a false and deceptive misrepresentation because the cost of processing payment transactions is well below the amount of the fee charged. Thus, the Junk Fees it charges for electronic transactions is mostly profit, which PaySchools keeps.

Am. Compl. ¶ 124; *see also id.* ¶ 83 ("PaySchools' Junk Fees far exceed the actual costs PaySchools incurs to process payments."); *id.* ¶ 181 (PaySchools is "not entitled to keep any fees over and above the actual cost of the services."); *id.* ¶ 125 ("the fees [PaySchools] charges parents are primarily for profit"). In other words, PaySchools is misleading reasonable consumers because it profits from fees. Not so.

"The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.' " *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (citing *Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26 (1995)). The operative phrase there being *reasonable* consumer. Plaintiff's case is premised on the assumption a reasonable consumer would be surprised to learn a private corporation is profiting from its services. If that proposition sounds inapposite, that's because it is. PaySchools is a

business that makes it easier to fund school lunch accounts online, without the risk of losing a paper check or cash. In doing so, it charges a markup for its services.

Much of this dispute can be resolved by looking to the definition of cost.[3] Merriam-Webster defines cost as "the amount or equivalent paid or charged for something; the outlay or expenditure (as of effort or sacrifice) made to achieve an object; [or] loss or penalty incurred especially in gaining something."[4] The definition—and common-sense understanding—of cost describes the price charged for a service. It does not contemplate providing that service at the lowest rate.

Plaintiff's argument also ignores notice PaySchools provides consumers. Courts have made clear, "there can be no section 349(a) claim when the allegedly deceptive practice was fully disclosed." *Broder v. MBNA Corp.*, 281 A.D.2d 369, 371 (1st Dep't 2001); *see also Fink*, 714 F.3d at 742. Here, as evidenced by Plaintiff's own pleadings, PaySchools disclosed its fees. Am. Compl. ¶¶ 82, 134. Indeed, PaySchools' website states it charges an internet convenience fee. *See infra*. With that context, no reasonable consumer should expect the fee to be dedicated solely to operating costs. *See Fink*, 714 F.3d at 742 (recognizing "context is crucial" when determining if conduct is deceptive under GBL).

Moreover, Plaintiff's individual frustration is immaterial to our analysis, as "[t]he question is not whether the plaintiff [her]self was misled, but whether the alleged conduct would objectively mislead a reasonable consumer." *Schuman v. Visa U.S.A., Inc.*, 788 F. Supp. 3d 563, 574 (S.D.N.Y. 2025) (citation and quotations omitted). Plaintiff's dissatisfaction in learning PaySchools is profitable does not render its conduct unlawful.

---

[3] "Courts within this Circuit routinely rely on accredited dictionary definitions to assess how a reasonable consumer would interpret a term in cases arising under sections 349 and 350 of the GBL." *Washington v. Coca Cola Co.*, 2025 WL 2720463, at *3 (S.D.N.Y. Sept. 24, 2025).

[4] *See Cost*, Merriam-Webster Dictionary (online), Merriam-Webster, https://www.merriam-webster.com/dictionary/cost (accessed June 8, 2026).

ii. <u>Injury</u>

Plaintiff's theory of damages is also inherently flawed. Plaintiff claims she was harmed because PaySchools overcharged her. This is, in essence, a price premium theory. "To allege injury under a price premium theory, a plaintiff must allege not only that defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350 (S.D.N.Y. 2020) (citation and quotations omitted). "[P]laintiffs must allege that on account of a materially misleading practice, they purchased a product and did not receive the full value of their purchase." *Wright v. Publishers Clearing House, Inc.*, 439 F. Supp. 3d 102, 114 (E.D.N.Y. 2020) (citation and quotations omitted) (cleaned up). But here, Plaintiff does not claim PaySchools' service was harmful or defective, only that she was overcharged.

Moreover, Plaintiff repeatedly states she would not have used PaySchools had she known the transaction fees went toward profit, but such a claim cannot sustain a cause of action. "It is well-settled that a plaintiff cannot establish a Section 349 claim by claiming that he would not have purchased the product absent the deceptive practice." *Tomassini v. FCA US LLC*, 2016 WL 11707888, at *7 (N.D.N.Y. Nov. 23, 2016); *see also Baron v. Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't 2007) (dismissing GBL § 349 claim where "plaintiff seeks a refund of the purchase price . . . on the ground that she would not have purchased the drug absent defendant's deceptive practices."); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (same).

In sum, "where a plaintiff merely believes she was deceived into purchasing the product and spending what she did, and there were no allegations related to the value of the purchased product, or how the product fell short of what it purported to be, GBL §§ 349 and 350 claims fail."

*Betzag v. BP Prods. N. Am. Inc.*, No. 23-CV-9602 (JMA) (ST), 2025 WL 1309848, at *7 (E.D.N.Y. Jan. 23, 2025) (citation and quotations omitted).

Plaintiff cannot use a service, receive the service as advertised, pay fees she was provided notice of, only to allege harm when discovering the company is profitable. Plaintiff's attempt to redefine PaySchools' transaction fees as 'junk fees' does not render its conduct unlawful.

<u>*Misrepresentation by Omission*</u>

While there is significant overlap between Plaintiff's misrepresentation and material omission claims, this Court will analyze both. Plaintiff alleges PaySchools concealed its profits and contracts with schools like Garden City. *See* Am. Compl. ¶ 142–43.

To state an omission claim, a plaintiff must plausibly allege: (1) that a business possessed material information that is relevant to the consumer; (2) the plaintiff could not have reasonably obtained that information; and (3) the business failed to provide that information to consumers. *See Schuman*, 788 F. Supp. 3d at 581.

Importantly, liability does not attach any time a business withholds information from consumers, as such an interpretation would impose liability on every company doing business in New York. Instead, New York adopts an objective approach imposing liability on material omissions that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego*, 85 N.Y.2d at 26.

Plaintiff's claim that PaySchools deceptively concealed its profits is unsuccessful. The profit margin of a privately owned company is not material to consumers. Plaintiff fails to articulate why a reasonable consumer would expect to be made privy to this information. We doubt the New York State Legislature intended GBL § 349 to require businesses to disclose profits. Indeed, "[i]n explicating the legislative objective behind section 349, we are mindful of the

potential for a tidal wave of litigation against businesses that was not intended by the Legislature." *Oswego*, 85 N.Y.2d at 26. GBL § 349 "surely does not require businesses to ascertain consumers' individual needs and guarantee that each consumer has all relevant information specific to its situation." *Id*.

Plaintiff's argument that PaySchools conceals contracts fares no better. Initially, we recognize that parents and guardians certainly have a material interest in agreements between school districts and third-party service providers. Indeed, all citizens have a material interest in how their tax dollars are spent. Plaintiff's ability to access those agreements is where Plaintiff's claim dissolves.

Courts of this Circuit have abandoned the notion that a business must have exclusive possession of material information for an omission-based claim to survive. The court in *Schuman* discussed at length New York Court of Appeals and Second Circuit decisions regarding plaintiffs' access to material information. 788 F. Supp. 3d at 580. The court ultimately held material omission claims are permissible where "plaintiffs could not reasonably have obtained the relevant information they now claim the defendant failed to provide." *Id*. (citation and quotations omitted).

Here, Plaintiff alleges she could not reasonably obtain contracts between PaySchools and Garden City because PaySchools requires school districts to invoke statutory exemptions for Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") and New York's Freedom of Information Law ("FOIL")[5] requests. Am. Compl. ¶ 86. Further, "PaySchools may seek an injunction to prevent the district from disclosing information responsive to FOIA or FOIL requests." *Id*. ¶ 87. But notably, Plaintiff never sought to obtain the contracts through FOIL. Oddly, under Plaintiff's third-party beneficiary cause of action, she states to have requested the contracts "via a freedom

---

[5] *See* New York Public Officers Law § 84 *et seq*.

of information act [i.e., FOIA] request that remains pending." *Id*. ¶ 196. [6] Evidently, "[FOIA] applies to the federal government only and not to municipal or state agencies." *Gianello v. Port Auth. of N.Y. & N.J.*, 2011 WL 2436674, at *1 (S.D.N.Y. June 16, 2011); *see also Grand Cent. P'ship, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999).

Here, the contracts are between local school districts and PaySchools. Accordingly, FOIL is the applicable statute. *See Barber v. Cattaraugus Cnty. Bd. of Elections*, 2025 WL 3647524, at *3 (W.D.N.Y. Sept. 16, 2025).

As to FOIL, Plaintiff merely presumes she will be denied access. This argument illustrates Plaintiff's failure to exhaust administrative remedies. FOIL "was enacted to promote open government and public accountability and imposes a broad duty on government to make its records available to the public." *Miller v. New York State Dep't of Transp.*, 58 A.D.3d 981, 982 (3d Dep't 2009) (citation and quotations omitted). "Accordingly, government records are presumptively open to inspection and copying by the public unless they come within one of the narrowly construed exemptions[.]" *Id*. A party can make a FOIL request to access public records—including government contracts.

Here, Plaintiff's omission claim anticipates the government theoretically denying her FOIL request. But no such request has been made. Plaintiff cannot assert the contract is being concealed without making a FOIL request—the legislatively enacted avenue to obtain such a document.

Plaintiff's argument that Garden City will invoke a statutory exemption or PaySchools will seek an injunction is pure conjecture. Such conclusory arguments stand in contrast to the futility exemption invoked in *New York Times Co. v. City of New York Police Department* where the

---

[6] To the extent this was a typographical error, and Plaintiff did request the contracts under FOIL, such has not been made clear in her memorandum of law. Indeed, Plaintiff did not bother to address FOIA or FOIL in opposition to PaySchools' motion.

government "made clear that it would not grant petitioners' request for [documents] and any further attempt at internal administrative review would be futile." 103 A.D.3d 405, 408 (1st Dep't 2013).

Even still, denial of Plaintiff's FOIL request would not ripen her claim for judicial review, as FOIL provides for administrative appeal. *See* N.Y. Pub. Off. Law § 89 (4)(a). Following the denial of an appeal, a party may file an Article 78 Petition in New York State Court. N.Y. Pub. Off. Law § 89 (4)(b). Put succinctly, "[t]he appropriate vehicle for challenging denials of access guaranteed by [FOIL] is a state court proceeding pursuant to N.Y.C.P.L.R. Article 78 upon exhaustion of administrative remedies." *Schuloff v. Fields*, 950 F. Supp. 66, 67–68 (E.D.N.Y. 1997).

And Courts in this Circuit are of a piece: Federal District Courts do not have jurisdiction to review FOIL denials. *See Barber*, 2025 WL 3647524 (W.D.N.Y. Sept. 16, 2025); *Jenn-Ching Luo v. Baldwin Union Free Sch. Dist.*, 2013 WL 4719090 (E.D.N.Y. Sept. 3, 2013); *Posr v. City of New York*, 2013 WL 2419142 (S.D.N.Y. June 4, 2013), *affirmed. Posr v. Ueberbacher*, 569 F. App'x 32 (2d Cir. 2014); *Jackson v. Wilcox*, 2023 WL 2756489 (N.D.N.Y. Apr. 3, 2023).

As such, Plaintiff's inability to access a government contract does not fit within the remedies provided by GBL § 349. Rather, Plaintiff must file a FOIL request and exhaust administrative remedies enumerated by the New York State Legislature. A putative class action in Federal Court, however, is an inappropriate solution to a problem of local governance.

### *National School Lunch Act*

Also lodged in Plaintiff's GBL claim are allegations PaySchools violated the National School Lunch Act ("NSLA") 42 U.S.C. § 1751 *et. seq.*, and Visa Merchant rules.

Plaintiff's NSLA argument relies on a 2014 guidance document from the United States Department of Agriculture ("USDA") that children should not be charged school lunch fees by

third parties. *See* Am. Compl. ¶¶ 148–54. The USDA guidance letter permits School Food Authorities to charge fees. *Id*. ¶ 153. A School Food Authority is defined as "the governing body which is responsible for the administration of one or more schools," —i.e., the school itself. 7 C.F.R. § 210.2. The argument fails for several reasons.

As an initial matter, the NSLA does not confer a private right of action. *See Great Lakes Consortium v. Michigan*, 480 F. Supp. 2d 977, 982–83 (W.D. Mich. 2007); *Cole v. Forest Park Sch. Dist. 91*, 2006 WL 1735252, at *1 (N.D. Ill. June 19, 2006); *Bd. of Educ. of Twp. High Sch. Dist. No. 205 v. Illinois State Bd. of Educ.*, 1989 WL 106610, at *4 (N.D. Ill. Sept. 11, 1989). To the extent Plaintiff attempts to bring a cause of action under the NSLA, such is improper.

Plaintiff argues even if there is no NSLA private right of action, the fees are deceptive because they violate USDA guidance. Here, Plaintiff conflates informal agency guidance with enforceable law, but Federal Courts routinely highlight the difference. *See Christensen v. Harris Cnty.*, 529 U.S. 576, 587, (2000) (holding "policy statements, agency manuals, and enforcement guidelines" lack the force of law); *Chao v. Russell P. Le Frois Builder, Inc.*, 291 F.3d 219, 227 (2d Cir. 2002) (holding informal administrative opinion lacks the force of law); *Walker v. Eggleston*, 2006 WL 2482619, at *5 (S.D.N.Y. Aug. 29, 2006) ("informal opinion contained in the USDA Letter . . . lacks the force of law") (citation omitted). As such, the more than ten-year-old guidance letter cited by Plaintiff is immaterial to our analysis.

Even still, if PaySchools did violate the NSLA or applicable regulations, such would not constitute a *per se* GBL § 349 violation, as the statute "does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers." *Schlessinger v. Valspar Corp.*, 21 N.Y.3d 166, 167 (2013); *see also Sigall v. Zipcar, Inc.*, 2014 WL 700331, at *6 (S.D.N.Y. Feb. 24, 2014), *aff'd,* 582 F. App'x 18 (2d Cir. 2014) (recognizing that

-13-

not all unlawful conduct is deceptive). Indeed, "[t]o allow Plaintiff to use [regulations] to assert a claim under GBL § 349 that would otherwise be unavailable would be to apply GBL § 349 far more broadly that the New York legislature intended." *Dimond v. Darden Restaurants, Inc.*, 2014 WL 3377105, at *7 (S.D.N.Y. July 9, 2014).

Further, the cases Plaintiff relies on do not support her contention. Plaintiff cites *Kidd v. Delta Funding Corp.*, 299 A.D.2d 457 (2d Dep't 2002). There, the New York Banking Department investigated a mortgage lender, finding it charged illegal processing fees on mortgage applications. The lender entered a settlement with the Banking Department where the lender "acknowledged that separate processing fees may not be charged, and agreed to unconditionally refund all processing fees upon the request of the customer or the Banking Department within six months of the date the agreement was signed." *Id*. at 457. The borrowers filed suit, alleging they were never informed of the illegal fees, and the lender concealed the settlement agreement and failed to provide the borrowers the opportunity to collect refunds. The Appellate Division found the trial court properly denied summary judgment based, in large part, on the lender's concealing the settlement and failing to provide refunds. Such stands in sharp contrast to the case at bar.

Plaintiff's reliance on *Negrin v. Norwest Mortg., Inc.* is also misplaced. 263 A.D.2d 39, 43 (2d Dep't 1999). There, the Appellate Division held a mortgagee charging recording and fax fees, in direct violation of New York Real Property Law § 274-a, constituted a GBL § 349 claim. New York Real Property Law § 274-a unambiguously states "[t]he mortgagee shall not charge for providing the mortgage-related documents." N.Y. Real Prop. Law § 274-a. The mortgagee still charged fees and concealed them as fax and recording costs. PaySchools processes online transactions for school lunch payments. It provides a service and charges a fee to use the service. Such is different than a mortgage lender disguising fees in direct violation of controlling law.

-14-

*Bartolomeo v. Runco* is also inapplicable. 616 N.Y.S.2d 695 (City Ct. 1994). There, a landlord violated GBL § 349 by renting out an illegal cellar apartment after misrepresenting the apartment as legal. Such misrepresentations are not present here. In sum, the alleged regulatory violations do not constitute GBL § 349 liability.[7]

## II.    Breach of Contract

Plaintiff's breach of contract claim is, in a word, confusing.

To establish breach of contract, a plaintiff must show: "(1) a contract exists; (2) plaintiff performed in accordance with the contract; (3) defendant breached its contractual obligations; and (4) defendant's breach resulted in damages." *Martinez v. Agway Energy Servs., LLC*, 88 F.4th 401, 409 (2d Cir. 2023) (citation omitted).

Plaintiff states PaySchools promised "(1) that it would provide students with money that would result in school lunches and food, and (2) it would disclose the existence of any transaction fees prior to completing any payment to PaySchools." *Id*. ¶ 164. In reading the Amended Complaint, PaySchools *did* in fact provide students with money and disclose transaction fees. Nevertheless, PaySchools allegedly breached these terms "because it skimmed from the top in the form of exaggerated Junk Fees" *id*. ¶ 165, and failed to disclose that fees would be charged for auto-replenishments. *Id*. ¶ 167–68. These allegations contradict portions of the complaint and are duplicative to the GBL claim.

Plaintiff's argument that fees for auto-replenishments constitute breach fails. PaySchools terms of service provides "[i]f you are required to pay a fee, we will disclose the fee to you before you complete your payment. If you do not wish to pay the fee, you will not be obligated to proceed with the transaction." Am. Compl. ¶ 90. Parents set up auto-replenishment "by identifying a

---

[7] The same logic applies to Plaintiff's allegation PaySchools violated Visa rules, as she fails to explain how such conduct tends to deceive consumers. A more detailed discussion of Visa Rules is provided below.

payment source (*a credit card, debit card, or bank account*)[.]" *Id*. ¶ 92 (emphases added). Plaintiff continues, that PaySchools breached the terms of service by charging fees for auto-replenishments "prior to disclosing that fees will apply to the transaction." *Id*. ¶ 94. But by Plaintiff's own admission, PaySchools' disclosed fees for online transactions in at least three sections of its website. *See infra*. Plaintiff cannot escape this contradiction by alleging she was unaware fees would apply to auto-replenishments.

Controlling here, "courts are under no obligation to accept as true allegations that are internally inconsistent." *Shih v. Broadway League*, 2024 WL 3928618, at *3 (S.D.N.Y. Aug. 20, 2024); *see also Pierce v. Fordham Univ., Inc.*, 2016 WL 3093994, at *2 (S.D.N.Y. June 1, 2016), *aff'd*, 692 F. App'x 644 (2d Cir. 2017) ("It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss.") (citation and quotations omitted).

In the same vein, "if the allegations of a complaint are contradicted by documents made a part thereof . . . the court need not accept as true the allegations of the complaint." *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1232–33 (S.D.N.Y.), *aff'd*, 43 F.3d 1458 (2d Cir. 1994); *see also TufAmerica, Inc. v. Diamond,* 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (same). Here, the screenshot provided by Plaintiff—and a brief visit to PaySchools' website—shows PaySchools disclosed fees prior to transactions. While *Barnum* and *TufAmerica* pertain to allegations in a complaint contradicting terms of a contract attached thereto, the same logic applies when Plaintiff furnishes this Court with evidence of PaySchools disclosing the very fees it allegedly concealed.

Moreover, Plaintiff fails to articulate how a privately-owned company breached the terms of an agreement by charging fees that exceed its operating costs. Consequently, Plaintiff fails to identify what terms of the agreement PaySchools breached. It is axiomatic that dismissal is appropriate where a Plaintiff "fail[s] to point to the specific terms of the contract that [a defendant] breached." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 416 (S.D.N.Y. 2009).

While Plaintiff states PaySchools "breached the contract and [has] harmed Plaintiff, students, and their families" such is an unsupported conclusion. Am. Compl. ¶ 169. And "[s]tating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008).

Further, these allegations are indistinguishable from Plaintiff's GBL claim. The monetary loss for a GBL claim must be "independent of the loss caused by the alleged breach of contract." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d. Cir 2009). A duplicative injury is not sufficient. *See Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 305 (S.D.N.Y. 2012). Controlling here, dismissal is appropriate where "breach of contract and GBL claims are effectively identical [and] turn on the same conduct." *Polk v. Del Gatto, Inc.*, 2021 WL 3146291, at *11 (S.D.N.Y. July 23, 2021). Plaintiff does nothing to differentiate her breach of contract and GBL claims as the alleged injury is based on the same conduct—transaction fees. *See* Am. Compl. ¶¶ 160, 170. Accordingly, Plaintiff's breach of contract claim is dismissed.

### III.    Breach of Contract—Third Party Beneficiary

Plaintiff's third-party beneficiary claim is premised on PaySchools' alleged violation of Visa Rules. Plaintiff claims "PaySchools is a merchant under the terms of its contract with the schools" and "is under an obligation through these various contracts to comply with rules of the

credit card companies, like Visa's Rules." *Id*. ¶¶ 198–99. Plaintiff claims PaySchools violated Visa Rules by:

> (1) assessing a convenience or junk fee on recurring charges like those of Plaintiff Hess, (2) by assessing a convenience fee in a "card absent environment" that is the school cafeteria, (3) by assessing charges above 3%, (4) by assessing a 4.75% charge on transactions above $50, (4) by assessing a charge in a circumstance where PaySchools is not the one providing any actual food or beverage service to the cardholder.

*Id*. ¶ 200. Plaintiff makes the conclusory allegation she and other parents are the intended beneficiaries of these contracts. *Id*. ¶ 202. Not so.

To establish a third-party beneficiary claim, a plaintiff must allege "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for [their] benefit and (3) that the benefit to [them] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate [them] if the benefit is lost." *Burns Jackson Miller Summit & Spitzer v. Lindner*, 59 N.Y.2d 314, 336 (1983).

Controlling here, "a non-party to the contract lacks standing to sue for breach absent a valid assignment of the claim." *Rynasko v. New York Univ.*, 63 F.4th 186, 194 (2d Cir. 2023). Third parties lack standing to enforce a contract unless it "clearly evidences an intent to permit enforcement by the third party." *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985); *see also Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (same). Dismissal is appropriate where the plaintiff fails to show the contracting parties "unequivocally intended to confer third-party beneficiary status on plaintiffs." *Abu Dhabi Com. Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 188 (S.D.N.Y. 2009).

Here, Plaintiff fails to show any indication she is the intended beneficiary of the agreement —let alone with clear evidence. Instead, Plaintiff merely asserts she is the intended beneficiary

without reference to contractual language or circumstances to support the conclusion. Am. Compl. ¶ 202.

*Reznick v. Bluegreen Resorts Mgmt., Inc.*, is instructive, where this Court dismissed a third-party beneficiary claim when the plaintiff "merely assert[ed] that they were and are third party beneficiaries of the agreement[.]" 2019 WL 1004589, at *4 (E.D.N.Y. Mar. 1, 2019) (cleaned up). The court found, dismissal is appropriate where, like here, "[t]he complaint lacks allegations as to any specific contractual term from which it could be plausibly inferred . . . [the contracting parties] intended Plaintiffs to be third-party beneficiaries of their contractual agreement." *Id*; *see also Walsh v. Rigas*, 2019 WL 294798, at *15 (S.D.N.Y. Jan. 23, 2019) (dismissing third-party beneficiary claim where plaintiff failed to plead "specific contractual language sufficiently evincing intent to benefit plaintiffs."). Plaintiff's third-party beneficiary claim is dismissed.

## IV.    Unjust Enrichment

Plaintiff's unjust enrichment claim suffers the same fate. To plead unjust enrichment, the plaintiff must allege "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (citation and quotations omitted).

Here, Plaintiff—again—alleges PaySchools reaped unwarranted benefits from charging excessive fees at Plaintiff's expense. Am. Compl. ¶¶ 172–80.

Unjust enrichment is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort[.]" *Corsello v. Verizon N.Y., Inc.*, 18 N.Y.3d 777, 944 (2012). However, Rule 8(a)(3) permits a plaintiff to plead unjust enrichment "as an alternative to a breach of contract claim." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015; *see also Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y.

2012) ("While a party generally may not simultaneously recover upon a breach of contract and unjust enrichment claim arising from the same facts, it is still permissible to plead such claims as alternative theories").

Here, Plaintiff's unjust enrichment claim is brought in the alternative to the breach of contract claim. Am. Compl. ¶ 173. Nevertheless, "claims for unjust enrichment will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." *Nelson v. MillerCoors, LLC*, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017). Indeed, "[t]he critical inquiry is whether the *factual allegations* supporting each claim are the same[.]" *Greene v. Clean Rite Centers, LLC*, 714 F. Supp. 3d 134, 151 (E.D.N.Y. 2024) (citation omitted) (emphases in original). But Plaintiff's unjust enrichment claim relies on the same facts.

Likewise, Plaintiff's unjust enrichment claim is duplicative to her GBL claim. This too is grounds for dismissal. *See Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 285 (E.D.N.Y. 2021) (dismissing unjust enrichment claim as duplicative where it "is based on the same allegations as her claims of violations of GBL §§ 349 and 350[.]"). To be sure, "an unjust enrichment claim will not survive a motion to dismiss where the plaintiff fails to explain how his unjust enrichment claim is not duplicative of his other causes of action." *Betzag*, 2025 WL 1309848, at *13 (citation omitted). Plaintiff does not distinguish her unjust enrichment claim so dismissal is warranted.

## V.    Fraud by Omission

Plaintiff's fraud by omission claim is that PaySchools' failed to disclose 'fee-free' options. Plaintiff states PaySchools "failed to disclose any other methods for conducting transactions that

were free from the Junk Fees, except for cash payments." Am. Compl. ¶ 187. Aside from this being a self-contradictory statement, it is insufficient.

To state a fraud by omission claim, Plaintiff must allege: "(1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

Controlling here, fraud by omission is actionable "only if the non-disclosing party has a duty to disclose." *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1483 (2d Cir. 1995). Indeed, "[a] cause of action for fraudulent concealment requires . . . the defendant had a duty to disclose material information and that it failed to do so." *P.T. Bank Cent. Asia v. ABN AMRO Bank N.V.*, 301 A.D.2d 373, 376 (1st Dep't 2003).

Here, Plaintiff fails to argue PaySchools had a duty to disclose fee-free alternatives. In its opposition, Plaintiff fails to address the issue. Instead, Plaintiff makes the terse assertion she adequately established fraud by omission and reiterates a string of legal conclusions. Absent from the memorandum is any reference to PaySchools' duty to disclose.

Underlying this is the heightened pleading standard for fraud. Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9; *see also Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 197 (2d Cir. 2013) ("Allegations of fraud are subject to a heightened pleading standard."). The Amended Complaint is devoid of any particularity. Instead, Plaintiff vaguely asserts PaySchools failed to disclose fee-free alternatives. Plaintiff fails to identify a duty to disclose, or how she actually relied on the omission. Reliance is particularly lacking since Plaintiff fails to explain why she could not have

-21-

-22-

obtained the allegedly omitted information about fee-free alternatives by simply calling her child's

school and asking about such options.  Plaintiff's fraud claim falls short.

## VI.    Local Politics

As a final point, this Court takes a moment to note that this case is largely an issue of

local governance—not a class action sounding in consumer fraud. A large portion of the

Amended Complaint is dedicated to Plaintiff's disagreement with PaySchools' business model,

citing reports from the Consumer Financial Protection Bureau, demands from Senators to the

Department of Agriculture to address school lunch fees, and remarks from President Biden in

his 2023 State of the Union Address—none of which are material to our legal analysis. Am.

Compl. ¶¶ 30, 60–64, 69–70. While we do not doubt Plaintiff's moral convictions, this Court

may not be the appropriate forum to address what appears to be an issue of local politics—

whether companies like PaySchools should be awarded contracts with school districts in the

first place.

We do not doubt that many parents find companies like PaySchools to be an unnecessary

middleman, charging fees to process online payments. But its conduct, as alleged in the Amended

Complaint, is not unlawful.

-23-

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. The case is dismissed with leave to replead, as such should be given if "the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991); *see also Slayton v. Am. Exp. Co.*, 460 F.3d 215, 230 (2d Cir. 2006) ("Leave to replead is to be liberally granted.").

**SO ORDERED.**

/s/
_____

Steven Tiscione
United States Magistrate Judge
Eastern District of New York

Dated: Central Islip, New York
August 4, 2026